# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (DAYTON)

| | |
|---|---|
| SHARON STANFORD, *et al.*, | Case No. 3:19-cv-00399 |
| Plaintiffs, | District Judge Michael J. Newman |
| vs. | Magistrate Judge Caroline H. Gentry |
| NORTHMONT CITY SCHOOL DISTRICT, *et al.*, | |
| Defendants. | |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Sanctions (Doc. No. 37). Plaintiffs seek to sanction counsel for Defendants Northmont City School District Board of Education and Vice Principal Chad Kaltenbach (collectively "Northmont Defendants") for asking questions that Plaintiffs consider to be offensive during the deposition of J.S., a minor child. This Court ordered expedited briefing and held a hearing on the Motion. For the reasons set forth below, Plaintiffs' Motion for Sanctions is **DENIED**.

### I. STATEMENT OF FACTS

Plaintiffs Sharon and Dwain Stanford are the parents of J.S., a former student at Northmont City Schools. (Doc. 23, PageID 608.) Plaintiff Katina Cottrell is the mother of J.E., a fellow student at Northmont. (*Id.*) Plaintiffs allege that the Northmont Defendants applied certain school policies to discipline students, including J.S. and J.E., in a racially discriminatory manner. (*Id.*, PageID 606-08 & 613-27.) By doing so, assert Plaintiffs, the Northmont Defendants violated the Fourth and Fourteenth Amendments to the U.S.

1

Constitution and Title VI of the Civil Rights Act. (*Id.*) Plaintiffs also claim that the Northmont Defendants violated state laws. (*Id.*, PageID 627-34.)

The Court previously denied the Northmont Defendants' motion to dismiss the second amended complaint. In its decision, the Court held that "Plaintiffs contend with sufficient particularity that Defendants violated J.S.'s and J.E.'s rights under the Equal Protection Clause, by suspending them from school in a racially discriminatory manner." (Doc. 32, PageID 1217.) The Court further explained that "[s]chool officials violate the Equal Protection Clause when they punish a student more severely for his conduct than other students ***because of the student's race***." *Heyne v. Metropolitan Nashville Pub. Sch.*, 655 F.3d 556, 570-71 (6th Cir. 2011) (emphasis added). (*Id.*) It is thus undisputed—and the parties agree—that the racial identities of J.S. and J.E. are relevant in this case.

Counsel for the Northmont Defendants, Tabitha Justice, took the deposition of J.S. via Zoom videoconference on January 27, 2022. The deposition lasted for slightly longer than two hours. Plaintiffs have clarified that the following questions identified in their Motion merely provide background information and are not themselves objectionable:

Q. Part of your claim in this case is that you – your discipline was due to your race. What do you consider your race to be?

A. Black.

(Doc. 61, PageID 1478, deposition page 28, lines 17-20.)

Q. In this case, you've alleged that you have been discriminated against because of your race, correct?

A. Yes.

Q. And you have called yourself black earlier, correct?

2

A. Yes.

Q. Your mother is white and your father is black, correct?

A. Yes.

(*Id.*, PageID 1481, deposition page 38, lines 3-15.)

Counsel for Northmont Defendants subsequently asked the following questions, which are the subject of Plaintiffs' Motion for Sanctions:

Q. [J.S.], I know race is at issue in the case because you've alleged race discrimination, but you would agree, and I think your mom already talked about this, that your skin is actually very white, isn't it?

MS. BAKER: Objection.

Q. Do you disagree with that statement?

A. Yes.

Q. In what way?

A. My skin isn't very white. I'm light skinned –

Q. What's that –

A. -- with black people hair, so I don't look like a white kid.

Q. Because of your hair?

MS. BAKER: Objection, this is irrelevant.

MS. JUSTICE: I'm just trying to understand.

Q. Are you saying you don't look like the white kids because of your hair?

A. I'm saying my skin isn't white. I don't have a white complexion. You said white. I'm not white. My, my skin isn't white. So no, I don't agree. That's the answer.

(Doc. 61, PageID 1485, deposition page 56 line 2 to page 57 line 7.)

3

Counsel for Plaintiffs, Christine Baker, did not object to these questions on any basis other than relevance. Nor did she request a break or adjourn the deposition so that she could contact the Court to express any concerns. Instead, nine days later, Plaintiffs filed their Motion for Sanctions. In it, they argue that the above-quoted questions were needlessly harassing. They request as a sanction an order limiting the length of expert witness depositions to three hours per expert witness. (Doc. 49, PageID 1288.)

## II.    LEGAL STANDARD

The scope of discovery in a civil case is intentionally broad. "Parties may obtain discovery regarding *any* nonprivileged matter that is relevant to any party's claim or defense …." Fed. R. Civ. P. 26(b)(1) (emphasis added). Further, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. The rule of thumb, therefore, is that information that is relevant is also discoverable.

The Federal Rules of Civil Procedure balance this broad scope of discovery with specific limitations. For example, Rule 26(b)(1) requires that discovery be "proportional" to the needs of the case. Rule 26(c) allows a party to seek a protective order if discovery will cause "annoyance, embarrassment, oppression, or undue burden or expense." Other Rules limit the form, timing or volume of certain categories of discovery requests. *See, e.g.*, Rule 26(b)(2)(B) (electronically stored information), Rule 26(b)(2)(C) (unreasonably cumulative or duplicative discovery), Rule 26(b)(3) (trial preparation materials), Rule 26(b)(4) (experts), Rule 26(d) (timing and sequence of discovery), Rule 30(a)(2) (number and timing of depositions) and Rule 33(a)(1) (number of interrogatories).

Notably, the Rules anticipate and address the exact circumstance that Plaintiffs complain about in their Motion. Specifically, Rule 30(d)(3) describes the procedure that deponents should follow if they believe that they are being harassed during a deposition:

**[Rule 30(d)(3)]** *Motion to Terminate or Limit.*

(A) *Grounds.* At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

(B) *Order.* The court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c). If terminated, the deposition may be resumed only by order of the court where the action is pending.

(C) *Award of Expenses.* Rule 37(a)(5) applies to the award of expenses.

Fed. R. Civ. P. 30(d)(3).

Thus, the appropriate procedure for a deponent (or their counsel) to follow if they believe that they are being harassed is to move to terminate or limit the deposition while it is being taken. Further, a motion to terminate or limit the deposition should only be granted if the Court finds that it "is being conducted in bad faith or in a manner that *unreasonably* annoys, embarrasses, or oppresses" the complaining deponent or party. Rule 30(d)(3) (emphasis added).

### III. ANALYSIS

It is undisputed that Plaintiffs did not follow the procedure, or invoke the remedy, provided for in Rule 30(d)(3). Rather than seek Court intervention during the deposition,

5

they chose to wait until after the deposition had concluded and then requested sanctions. They also chose to seek a wholly different remedy than the one that is provided for in Rule 30(b)(3): namely, an order limiting or terminating the deposition.

Plaintiffs have not identified a Federal Rule of Civil Procedure that would allow the Court to award the requested sanctions. *See O'Hara v. Board of Educ. of the Brooklyn City Sch. Dist.*, 72 Fed. App'x 311, 315 (6th Cir. 2003) (reversing award of sanctions where the lower court "cited no authority for the imposition of sanctions"). Although Plaintiffs cite to Rule 26(g) (*see* Doc. 49, PageID 1291), that Rule pertains solely to the signing of discovery requests and responses and is not applicable here. Rule 30(d)(3), which applies to the conduct being complained about here, does not permit a party to seek sanctions. Its sole remedy is an order that terminates or limits the deposition and, where appropriate, requires the losing party to pay the opposing party's attorneys' fees incurred in relation to that motion. Finally, Rule 37, which governs the imposition of sanctions, does not authorize an award of sanctions in these circumstances.

Instead, Plaintiffs contend that this Court is authorized to award the requested sanctions under the Introductory Statement on Civility ("Civility Statement") that is set forth as a preamble to this Court's Local Rules. Plaintiffs contend that the Civility Statement expressly requires "common courtesy," which it describes as "politeness in conversation" among other things. Plaintiffs argue that "[b]y needling a teenager about his racial identity, [Northmont Defendants] exceeded even the broadest definition of common courtesy." (Doc. 49, PageID 1290.) Citing Judge Newman's Standing Order on

6

Civil Cases, Plaintiffs further argue that the Court has "reserve[d] the right to sanction counsel who violate ... the Civility Statement." (*Id.*)

The Court will construe Plaintiffs' argument as a contention that this Court has the inherent authority to impose the requested sanctions. *See, e.g., U.S. v. Llanez-Garcia*, 735 F.3d 483, 492 (6th Cir. 2013) (noting that "[a] court may exercise its inherent power to sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or when the conduct was tantamount to bad faith.") (internal quotations and citation omitted). Assuming *arguendo* that the Court has such authority here, the Court finds that counsel for the Northmont Defendants did not violate the Civility Statement, much less act in bad faith, when she asked the above-quoted deposition questions. The Federal Rules of Civil Procedure do not limit counsel's ability to ask questions by insisting that the content of those questions be courteous or polite. Nor does the Civility Statement impose such a limitation. Instead, it requires only that counsel and parties conduct themselves in a professional manner. It does not purport to limit the *substance* of their communications, which is what Plaintiffs seek to do here.

Nor would it be prudent, in the view of this Court, to sanction counsel after-the-fact because the deponent (or his counsel) decided, after the conclusion of the deposition, that some of the questions had upset them. The scope of discovery is broad, as noted above. Counsel must be allowed to ask questions that are relevant, without being chilled by the fear that they will later be sanctioned because of the substance of those questions.

It is the nature of civil litigation that some questions will be unpleasant. As noted by Defendants' counsel, for example, plaintiffs who assert a claim for loss of consortium

7

are required to answer uncomfortable questions about their most intimate relationships. Here, Plaintiffs allege that their children were treated unequally on the basis of race. To prove their claims, they must establish that their children were discriminated against because of their race. Their children's racial identity is not only relevant; it is an element of their claims. Counsel for Defendants must be permitted to ask questions about that very relevant issue. *See Hayes v. Safe Fed. Credit Union*, Case No. 3:19-cv-0881, 2021 U.S. Dist. LEXIS 152833, *12 (D.S.C. Aug. 13, 2021) (denying motion brought under Rule 30(d)(3) where "the topics to which Plaintiff objected are relevant and, thus, were not posed for the purpose of harassing Plaintiff.").

Moreover, Rule 30(d)(3) does not provide the Court with the authority to limit or terminate a deposition simply because the questions are annoying, embarrassing, or oppressive. Most depositions include at least one such question. Instead, the questions must be ***unreasonably*** annoying, embarrassing or oppressive to establish a right to relief. *See Smith v. Logansport Community Sch. Corp.*, 139 F.R.D. 637, 646 (N.D. Ind. 1991) (noting that Rule 30(d)(3) requires unreasonableness and "is not designed to stop an uncomfortable but relevant interrogation or to forestall the elicitation of testimony damaging to a party's case."). Here, the Court does not find that the challenged questions were unreasonably annoying, embarrassing or oppressive.

Further, even if the challenged questions were sanctionable (and they are not), this Court would not exercise its inherent authority to award sanctions. Plaintiffs' counsel did not object that the questions were harassing. Nor did she contact the Court during the deposition to make a motion to terminate or limit it, which was the appropriate procedure

to follow under Rule 30(d)(3). The Court is not inclined to award sanctions when the basis for requesting them could have been avoided or limited if the requesting party had complied with the applicable rule. *See Western Convenience Stores, Inc. v. Suncor Energy U.S.A., Inc.*, Case No. 11-cv-01611, 2014 U.S. Dist. LEXIS 42443, *102 (D. Col. Mar. 27, 2014) (declining to award sanctions where the requesting party had made a "tactical decision" not to seek relief under Rule 30(d)(3)).

Finally, even if a sanction were appropriate in this case (and it is not), the Court would not award the requested sanction of limiting the length of expert depositions in this case. There is no rational relationship between the challenged conduct and the requested sanction. Although Plaintiffs' counsel argues that this sanction is justified because it will limit the costs incurred by her clients, there must be some articulable basis between the alleged misconduct and the requested sanction. Here, there is none.

This Court must also address the Northmont Defendants' request to recover the cost of their attorneys' fees related to Plaintiffs' Motion. Assuming *arguendo* that the Court has the authority to order payment of such fees, the Court declines to do so. While Plaintiffs' Motion is not well-taken, the Court does not find that it is frivolous.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Sanctions (Doc. 49) is **DENIED**.

**IT IS SO ORDERED**.

March 3, 2022

Caroline H. Gentry
United States Magistrate Judge