UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

SHARON STANFORD, *et al.*,

      Plaintiffs,                           Case No. 3:19-cv-399

vs.

NORTHMONT CITY SCHOOL             District Judge Michael J. Newman
DISTRICT, *et al.*,

      Defendants.

_____

**ORDER: (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 99) ON ALL FEDERAL CLAIMS; (2) DISMISSING WITHOUT PREJUDICE PLAINTIFFS' REMAINING STATE LAW CLAIM FOR LACK OF SUPPLEMENTAL JURISDICTION; AND (3) TERMINATING THIS CASE ON THE DOCKET**

_____

This 42 U.S.C. § 1983 civil rights case concerns two local high school students suspended for ten days (but not expelled) by Northmont High School for violating the school's marijuana policy.[1]  The two high school students—both of whom are African American, minors, and referred to here by their initials, J.S. and J.E.—claim, *inter alia*, that they were unconstitutionally searched in violation of the Fourth Amendment and on account of their race, and wrongly suspended.  J.S., J.E., and their parents—also named as Plaintiffs in this lawsuit—name as Defendants the Northmont City School District ("School District"), and Northmont High School's Assistant Principal James Chad Kaltenbach ("Kaltenbach").  Now before the Court is Defendants' motion for summary judgment.  Doc. No. 99.  Plaintiffs, through counsel, responded in opposition.  Doc. No. 102.  Defendants replied, Doc. No. 103, and this matter is ripe for review.  For the reasons that follow, the Court, having carefully reviewed the undisputed facts of this matter, finds in favor of

---

[1] Northmont High School is in Clayton, Ohio, near Dayton.

Defendants on the federal claims pled here, and dismisses without prejudice the sole remaining state law claim.

## I.

### A.    Undisputed Facts

#### 1.    J.S.'s Suspension

The School District, in its student handbook for Northmont High School, forbids students from "com[ing] to school . . . with the smell of . . . marijuana on his/her breath/person." Doc. No. 99-1 at PageID 2519.  The punishment for violating this provision is a ten-day suspension.[2]  *Id.*

J.S. was in ninth grade at Northmont High School on February 19, 2019.  Doc. No. 61 at PageID 1473.  That day, he missed the bus and rode to school in a car with friends, all Northmont High School students.  *Id.*  Once J.S. arrived at Northmont High School, Kaltenbach received a report from a secretary that he and his friends smelled like marijuana.  Doc. No. 91 at PageID 2089; Doc. No. 99-2 at PageID 2522.

Kaltenbach—right after a second teacher told him that J.S. smelled like marijuana—went to J.S.'s classroom and called him into his office.  Doc. No. 61 at PageID 1475; Doc. No. 91 at PageID 2089–90; Doc. No. 98 at PageID 2244.  In his office, Kaltenbach explained to J.S. the allegations and then told him to empty his backpack and pockets.  Doc. No. 91 at PageID 2091.  Kaltenbach testified at his deposition that he "clearly" smelled marijuana on J.S. before he began the search.  *Id.*  He sniffed J.S.'s left hand and found that it smelled like marijuana; he further called a school resource officer into the office to sniff J.S.'s hand.  Doc. No. 61 at PageID 1476, 1477; Doc. No. 89 at PageID 2041; Doc. No. 98 at PageID 2226.  That officer agreed.  Doc. No.

---

[2] Students violating this provision are recommended to the superintendent for expulsion, too.  *See* Doc. No. 98 at PageID 2519.  However, neither J.S. nor J.E. were expelled, as the School District found that expulsion was not warranted here.  *Id.* at PageID 2368–69; Doc. No. 61 at PageID 1479.  Thus, this provision is irrelevant to Plaintiffs' claims, and it is not implicated here.

98 at PageID 2226.

Kaltenbach next asked J.S. to explain why he smelled like marijuana. *Id.* at PageID 2225. J.S. refused to speak with him. *Id.* Kaltenbach then called J.S.'s father, explained the situation, and had J.S. wait in his office until J.S.'s father arrived. *Id.*; Doc. No. 61 at PageID 1477; Doc. No. 99-1 at PageID 2518, 2521.

Once J.S.'s father arrived, Kaltenbach informed J.S. that he was suspended for ten days for violating Northmont High School's marijuana policy. Doc. No. 98 at PageID 2226; Doc. No. 99-1 at PageID 2518, 2521. J.S.'s suspension paperwork, as Kaltenbach explained to him, listed his right to appeal the suspension to the School District's Board of Education. Doc. No. 98 at PageID 2226; Doc. No. 99-1 at PageID 2521.

### 2. J.E.'s Suspension

J.E. was in tenth grade at Northmont High School on January 22, 2020. Doc. No. 85 at PageID 1871.[3] That day, Assistant Principal Teresa Dillon ("Dillon") received a call from two teachers who, after receiving comments from other students, told her that J.E. smelled like marijuana. Doc. No. 85 at PageID 1873–74; Doc. No. 90 at PageID 2060; Doc. No. 98 at PageID 2265. She called him to her office. Doc. No. 90 at PageID 2060. Once J.E. arrived at Dillon's office, she determined he smelled like marijuana. *Id.*; Doc. No. 98 at PageID 2265–66.

She began to search J.E.'s belongings—asking him to empty his backpack and pockets; lift up his pant legs; and take his shoes and socks off. Doc. No. 90 at PageID 2060. Like Kaltenbach, Dillon called over a school resource officer—along with Eric Hughes, a school administrator— who corroborated the smell. *Id.* Dillon called Kaltenbach to her office and he, too, noted that J.E.

---

[3] Although this lawsuit was filed in 2019, Plaintiffs filed an amended complaint—adding J.E. and his mother as Plaintiffs—on November 25, 2020. *See* Doc. No. 23. Thus, those events are properly before this Court.

smelled like marijuana. *Id.* at PageID 2069; Doc. No. 98 at PageID 2268. Kaltenbach also noted that J.E. was glassy-eyed. Doc. No. 90 at PageID 2069; Doc. No. 98 at PageID 2268. J.E. protested that he only smelled like marijuana because his stepfather smoked and alleged that his hand lotion was the source of the odor. Doc. No. 85 at PageID 1874. However, everyone in the office confirmed that J.E. smelled like marijuana, and Dillon would later testify that the "slight" smell of lotion did not overcome the marijuana smell nor his "glassy eye[d]" appearance. Doc. No. 90 at PageID 2060.

Dillon gave J.E. a ten-day suspension notice. *Id.* at PageID 2060–61. She offered J.E. a chance to explain his "side of the story." Doc. No. 98 at PageID 2263. Then, she called J.E.'s mother, and, after she arrived, explained to her the suspension and how J.E. could make up any missed assignments. Doc. No. 90 at PageID 2061.[4]

## B.     Procedural History

J.S. and J.E. appealed their suspensions in formal hearings, represented by counsel, to the Board of Education. *See id.* at PageID 2223, 2259. Both lost their appeals, so they appealed those decisions to the Montgomery County, Ohio Common Pleas Court. *See* Doc. Nos. 99-2, 99-3. The state trial court found that neither suspension violated the two students' constitutional rights, but found the cases moot. *See* Doc. No. 99-2 at PageID 2529–32; Doc. No. 99-3 at PageID 2541–42. When J.S. appealed (but J.E. did not), the Second District Court of Appeals affirmed on mootness alone. *See Stanford v. Northmont City Schs.*, No. 28884, 2021 WL 1054123, at \*4 (Ohio Ct. App. Mar. 19, 2021).

J.S. and his parents filed suit here on December 23, 2019. Doc. No. 1. They added J.E.

---

[4] It is unclear if either J.S. or J.E. received prior discipline for a marijuana-related offense, but they received discipline in the past for violating school policy. *See* Doc. No. 61 at PageID 1486; Doc. No. 98 at PageID 2370–90.

4

and his mother as plaintiffs in their second amended complaint, filed on November 25, 2020. *See* Doc. No. 23. Their second amended complaint alleged state law claims against the City of Clayton, Ohio, but this Court recently dismissed those claims with prejudice. Doc. Nos. 23, 83. Now pending are Plaintiffs' remaining claims against Kaltenbach and the School District: (1) a § 1983 claim alleging the School District deprived J.S. and J.E. of their federal right to education through searching and suspending them; (2) Fourth Amendment claims, under the federal and Ohio constitutions, challenging the searches of J.S. and J.E.; (3) Due Process Clause claims challenging how J.S. and J.E. were suspended; (4) Title VI claims alleging racial discrimination in suspending J.S. and J.E. in comparison to white students—claims which rely on statistics, several incidents outside of the suspensions, and two potential comparators; (5) Equal Protection Clause claims, relying on the same allegations of race discrimination as the Title VI claims; and (6) a state law negligent supervision claim against the School District for mishandling its supervision of Kaltenbach in a manner that caused J.S. and J.E. harm. Doc. No. 23 at PageID 617–30.

## II.

"Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Cmty. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)). Once "a motion for summary judgment is properly made and supported, an opposing party[.]" *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). Instead, the party opposing summary judgment has a shifting burden and "must—by affidavits or as otherwise provided in [Fed. R. Civ. P. 56]—set out specific facts showing a genuine issue for trial." *Id.* The Court does not have to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Guarino*

*v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted).

42 U.S.C. § 1983 allows citizens to sue for constitutional violations. *See Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). To state a § 1983 claim, a plaintiff must: (1) allege the violation of a constitutional or federal right; and (2) show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It shields "all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, --- U.S. ---, 138 S. Ct. 577, 589 (2018). To defeat qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). The Court may "address these requirements in either order[,]" and [i]f one is lacking, [the Court] need not address the other." *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) (citation omitted) (citing *Pearson*, 555 U.S. at 236).

### III.

Summary judgment is warranted for multiple reasons. First, regarding § 1983, Plaintiffs' constitutional rights were not violated, so Defendants are entitled to qualified immunity.[5] J.S.'s

---

[5] Two things are worth noting. First, Plaintiffs seemingly allege *Monell* liability claims about the School District's high school student handbook in their amended complaint, and they renew these claims at summary judgment. *See* Doc. No. 23 at PageID 618; Doc. No. 102 at PageID 2638. Because Defendants did not violate Plaintiffs' constitutional rights, the *Monell* claims fail as a matter of law. *See Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). Second, Plaintiffs do not indicate whether they sue Kaltenbach in his individual or official capacity. *See, e.g.*, Doc. No. 23. This proves unremarkable, however, because he is entitled to summary judgment on Plaintiffs' constitutional claims.

parents and J.E.'s mother are not proper § 1983 plaintiffs, and there is no federal right to receive a public education. Plaintiffs' Fourth Amendment claims fail, as the School District's agents had more than reasonable suspicion to perform these minimally intrusive searches.[6] The School District also comported with due process, through its agents, by explaining the charges—and the evidence proving that they violated the marijuana policy—before giving the two students an opportunity to tell their side of the story. Second, Plaintiffs' Title VI claims also fall short as a matter of law—Kaltenbach cannot be sued under Title VI; Plaintiffs identify no relevant comparators; and there is no evidence of intentional discrimination. Third, Plaintiffs' equal protection claims fail because, again, they cannot identify comparators or evidence of intentional discrimination. Finally, the Court declines to exercise supplemental jurisdiction over the remaining state law claim.

## A.   The Parents' § 1983 Claims

"In the Sixth Circuit, a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (citations omitted). Thus, "only the purported victim, or his [or her] estate's representative(s), may prosecute a section 1983 claim." *Id.* J.S.'s and J.E.'s parents are named as plaintiffs, along with

---

[6] One might wonder whether *res judicata*, under Ohio law, would bar the constitutional claims. It remains unclear whether it would, because Plaintiffs' suspension appeals were ultimately dismissed as moot, even though the state trial court also found no constitutional violation. *See, e.g.*, *Remus Joint Venture v. McNally*, 116 F.3d 180, 184 n.5 (6th Cir. 1997) ("If a first decision is supported both by findings that deny the power of the court to decide the case on the merits and by findings that go to the merits, preclusion is inappropriate as to the findings on the merits" (quotation omitted)). Ohio follows the Second Restatement of Judgments, which forbids *res judicata* where a decision rests both on the merits and a jurisdictional ground, like mootness. *See State ex rel. Davis v. Pub. Emps. Ret. Bd.*, 899 N.E.2d 975, 983 (Ohio 2008); Restatement (Second) of Judgments § 27 cmt. o (Am. Law. Inst. 1982); *see also, e.g.*, *Croce v. N.Y. Times Co.*, 930 F.3d 787, 792 (6th Cir. 2019) ("If the Ohio Supreme Court has not provided guidance on the issue at hand, we may consider . . . other sources such as 'restatements of law[.]'" (quoting *Mazur v. Young*, 507 F.3d 1013, 1016–17 (6th Cir. 2007))). While "conflicting judgments might undermine notions of federalism and comity[,]" *Remus*, 116 F.3d at 186–87 (Wellford, J., concurring), this proves inconsequential because Plaintiffs were not deprived of their constitutional rights. Accordingly, the Court need not wade into this thicket today.

J.S. and J.E., alleging constitutional claims under § 1983 against the School District and Kaltenbach based solely on J.S. and J.E.'s harms. Doc. No. 23 at PageID 603, 617–25. They cannot. *See Claybrook*, 199 F.3d at 357; *Foos v. City of Delaware*, 492 F. App'x 582, 592–93 (6th Cir. 2012). Defendants are, thus, entitled to summary judgment on J.S.'s and J.E.'s parents' § 1983 claims.[7]

### B.     Federal Right to Access Public Education

J.S. and J.E. claim an "infringement" of "the right to access public education" under § 1983. Doc. No. 23 at PageID 618. "Education, of course, is not among the rights afforded explicit protection under [the] Federal Constitution. Nor [is there] any basis for saying it is implicitly so protected." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973); *see also, e.g.*, *Gary B. v. Whitmer*, 957 F.3d 616, 648–49 (6th Cir. 2020), *reh'g en banc granted*, *vacated by*, 958 F.3d 1216 (mem.) (6th Cir. 2020) (vacating decision that found a federal right to a minimum public education only insofar as it gave access to literacy). Accordingly, Defendants are entitled to summary judgment on this claim.

### C.  Fourth Amendment Claims

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. It "extends this constitutional guarantee to searches and seizures by state officers, including public school officials." *Vernonia Sch. Dist. 47 v. Acton*, 515 U.S. 646, 652 (1995) (citations omitted).

---

[7] To be fair, Plaintiffs could seek to amend the complaint to clarify that the parents are only named as parties so that their minor children's claims could be brought through them. However, that amendment would be futile for two reasons. First, "parents cannot appear . . . on behalf of their minor children" for a § 1983 claim "because a minor's personal cause of action is her own and does not belong to her parent or representative." *Shepherd v. Wellman*, 313 F.3d 963, 971 (6th Cir. 2002) (citing *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)); *see also B.A.P. v. Overton Cnty. Bd. of Ed.*, 600 F. Supp. 3d 839, 845 (M.D. Tenn. 2022). Second, any such amendment would be futile because, as discussed herein, the School District and Kaltenbach did not violate J.S.'s or J.E.'s constitutional rights.

But there is "a relaxed standard for searches in the school setting[.]" *G.C. v. Owensboro Pub. Schs.*, 711 F.3d 623, 632 (6th Cir. 2013). Indeed, the Court need not strictly adhere "to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985). This inquiry employs a two-part test. The Court: (1) asks "whether the . . . action was justified at its inception"; and (2) "determine[s] whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place[.]'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). "A student search is justified in its inception when there are reasonable grounds for suspecting that the search will garner evidence that a student has violated or is violating the law or the rules of the school, or is in imminent danger of injury on school premises." *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 495–96 (6th Cir. 2008). A search is "permissible in scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 342. "In determining whether a search is excessive in its scope, the nature and immediacy of the governmental concern that prompted the search is considered." *G.C.*, 711 F.3d at 632 (quoting *Brannum*, 516 F.3d at 497).

It is beyond genuine dispute that J.S., by smelling strongly of marijuana while on school grounds, "violat[ed]" the School District's rules. *Brannum*, 516 F.3d at 495; Doc. No. 61 at PageID 1476, 1477; Doc. No. 89 at PageID 2041; Doc. No. 98 at PageID 2225–26. Normally, the smell of marijuana establishes probable cause to search for evidence of that drug. *See, e.g.*, *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993); *United States v. Vaughn*, 429 F. Supp. 3d 499, 511–12 (E.D. Tenn. 2019) (collecting cases). Considering the scent here would meet that

9

heightened standard, Kaltenbach's limited search through J.S.'s pockets, backpack, and shoes—even if that search did not reveal marijuana—"was reasonably related" to J.S.'s odor and the School District's goal of eliminating contraband from Northmont High School. *T.L.O.*, 469 U.S. at 341; *see also, e.g.*, *Rinker v. Sipler*, 264 F. Supp. 2d 181, 187–90 (M.D. Pa. 2003) (individualized suspicion existed to search student's locker, belongings, and person where he smelled like marijuana and exhibited signs of marijuana use).

The same applies to J.E. He, too, smelled strongly of marijuana. Doc. No. 90 at PageID 2069; Doc. No. 98 at PageID 2268. His glassy-eyed appearance added further suspicion that he used—and possibly possessed—marijuana. Doc. No. 90 at PageID 2060. Thus, the School District's officials could search him for marijuana. *See, e.g.*, *Garza*, 10 F.3d at 1246; *Bridgman v. New Trier High Sch. Dist. No. 203*, 128 F.3d 1146, 1149–50 (7th Cir. 1997) (school could drug test student with bloodshot eyes, red pupils, and odd demeanor).

J.S. alleges that Kaltenbach patted down his pants and pockets, but no evidence in the record supports this assertion. *See* Doc. No. 23-2 at PageID 848; Doc. No. 61 at PageID 1475–76; Doc. No. 99-1 at PageID 2526–27. Even if Kaltenbach did so, several individuals detected a strong odor of marijuana emanating from J.S. A pat down would, thus, be reasonably related to the School District's prevailing interest in removing narcotics from school grounds. *See, e.g.*, *Widener v. Frye*, 809 F. Supp. 35, 37–38 (S.D. Ohio 1992) (upholding search and seizure of student for smelling like marijuana where the search involved taking off his pants in front of security guards away from his classmates), *aff'd*, 12 F.3d 215 (6th Cir. 1993) (unpublished table decision).

J.S. and J.E. contend that "[g]iven the legality and widespread prevalence of marijuana, simply smelling like it does not give rise to reasonable suspicion that a student possesses contraband." Doc. No. 102 at PageID 2641. The Court disagrees. First, marijuana is illegal to

10

possess in Ohio. Ohio Rev. Code § 2925.11(C)(3).[8] Second, just because an illegal substance is widespread does not mean that any officer, investigating potential violations of criminal law, lacks probable cause to search for it if he or she observes signs that it is nearby. *See, e.g.*, *United States v. Fieck*, 54 F. Supp. 3d 841, 843–44 (W.D. Mich. 2014) (finding that, even though medical marijuana was legal in Michigan, scent of marijuana provided probable cause to search). Whether marijuana is widespread still does not matter to schools, which have an interest in eradicating narcotics from their halls, so the Court will not carve out an exception to the rule that the scent of marijuana provides probable cause to search. *See Garza*, 10 F.3d at 1246; *Vaughn*, 429 F. Supp. 3d at 511–12; *cf. Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 839 (2002) (Breyer, J., concurring) ("[T]he drug problem in our Nation's schools is serious in terms of size, the kinds of drugs being used, and the consequences of that use both for our children and the rest of us"). Accordingly, the searches were constitutional, and Defendants are entitled to qualified immunity. *See, e.g.*, *Crawford*, 15 F.4th at 760.[9]

### D. Fourteenth Amendment Claims

"[S]tudents facing suspensions of ten days or fewer have a property interest in educational benefits and a liberty interest in their reputations to qualify them for protection against arbitrary suspensions under the Due Process Clause." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) (citing *Goss v. Lopez*, 419 U.S. 565, 576 (1975)). "[O]nce school administrators tell a student what they heard or saw, ask why they heard or saw it, and allow a

---

[8] It is legal medicinally when authorized, *see* Ohio Rev. Code § 2925.11(B)(1)(d), but there is no evidence that either J.S. or J.E. were authorized to possess medical marijuana, and that would not affect the School District's authority to search either student. *See, e.g.*, *United States v. Fieck*, 54 F. Supp. 3d 841, 843–44 (W.D. Mich. 2014).

[9] Plaintiffs cannot maintain their claim under Ohio's constitution because § 1983 "does not cover conduct that allegedly violates state law." *Neinast v. Bd. of Trs. of Columbus Metro. Library*, 346 F.3d 585, 597 (6th Cir. 2003) (quoting *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989)).

brief response, a student has received all the process that the Fourteenth Amendment demands." *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1359 (6th Cir. 1996) (quoting *C.B. v. Driscoll*, 82 F.3d 383, 386 (11th Cir. 1996)).  In sum, "all that a school official must do is give (1) adequate notice of the charge against the student, (2) an explanation of the evidence supporting the charge and (3) an opportunity for the student to respond." *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 639 (6th Cir. 2004) (citations omitted).  However, the school must follow "fundamentally fair procedures" before suspension, meaning "school officials responsible for deciding whether to exclude a student from school must be impartial."  *Heyne*, 655 F.3d at 567 (citations omitted).

It is undisputed that J.S. and J.E. received due process.  The record shows that Kaltenbach and Dillon told J.S. and J.E., respectively, that they smelled like marijuana, in violation of the School District's policy; informed them that multiple individuals corroborated this fact; and gave them a chance to respond before explaining their suspensions, giving them "all the process that the Fourteenth Amendment demands." *Buchanan*, 99 F.3d at 1359; Doc. No. 61 at PageID 1477; Doc. No. 85 at PageID 1874; Doc. No. 90 at PageID 2261; Doc. No. 98 at PageID 2225, 2263; Doc. No. 99-1 at PageID 2518, 2521; *see also Granger v. Klein*, 197 F. Supp. 2d 851, 875–76 (E.D. Mich. 2002) (granting summary judgment on student's due process claim where he was told twice that he was being suspended for violating the school's sexual harassment policy).

J.S. and J.E. nonetheless argue the following actions, in their view, violated due process: (1) Defendants did not stay the suspensions pending appeal; (2) they issued notices to suspend without further factual inquiry; (3) they unconstitutionally searched J.E. and J.S.; (4) they ignored Kaltenbach's alleged misconduct in cases unrelated to J.E.'s or J.S.'s suspensions; (5) they ignored Kaltenbach's alleged bias against the J.S. over a controversy involving J.S.'s sister and her

participation in gym class; (6) J.S. and J.E. were unaware "that smelling like marijuana would be deemed illegal behavior"; (7) "no administrator has ever disagreed that a student smells like marijuana"; (8) the School District purportedly violated Ohio law by not "act[ing] on suspensions in [an] open hearing"; and (9) other alleged misconduct that occurred during the suspension appeals. Doc. No. 102 at PageID 2636–37. None of these arguments are persuasive. The School District's actions after imposing the ten-day suspensions are irrelevant to J.S.'s and J.E.'s due process claims. *See, e.g.*, *Heyne*, 655 F.3d at 569–70 (reversing denial of qualified immunity on due process claim where alleged misconduct occurred after the student was suspended). Indeed, the Due Process Clause does not require "truncated trial type-procedures" for ten-day suspensions, *Goss*, 419 U.S. at 583, so offering J.S. and J.E. full explanations and a chance to respond gave them "all the process" they were due. *Buchanan*, 99 F.3d at 1359; *see also Smartt v. Clifton*, No. C-3-96-389, 1997 WL 1774874, at *15–16 (S.D. Ohio Feb. 10, 1997) (school was not required to allow right to appeal prior to imposing suspension).

Furthermore, the record reveals no bias from Kaltenbach. Granted, "[p]rocedural due process is not satisfied when a person has a protected interest under the Due Process Clause and the individual responsible for deciding whether to deprive that person of his interest is biased." *Heyne*, 655 F.3d at 566 (citations omitted). But J.S. and J.E. merely state—without any support in the record—that Kaltenbach held a bias against them because he participated in a decision denying J.S.'s sister the ability to wear certain pants during gym class. Doc. No. 63 at PageID 1547. Because "[a]ny alleged prejudice on part of the [decisionmaker] must be evident from the record and cannot be based in speculation or inference[,]" they have not demonstrated there is a genuine issue of material fact as to Kaltenbach's impartiality based on alleged unrelated misconduct and incidents. *Doe v. Cummins*, 662 F. App'x 437, 450 (6th Cir. 2016) (quoting *Nash*

13

*v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir. 1987)); *see also, e.g., Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 602 (S.D. Ohio 2016) (noting that "Plaintiffs' mere belief that Defendants' acted with ulterior motives" in suspending them from school did not state bias, considering school officials receive "a presumption of honesty and impartiality" (citation omitted)).  Considering this, Defendants shall receive summary judgment on this claim, and they are entitled to qualified immunity.  *See, e.g., Crawford*, 15 F.4th at 760.

### E.    Title VI Claims

Under Title VI, "[n]o person in the United States shall, on the ground of race . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000(d).  Title VI applies to a "recipient" of federal funding, which includes a public educational entity.  *See* 34 C.F.R. §§ 100.13(i), 100.3(b*); Zeno v. Pine Planes Cent. Sch. Dist.*, 702 F.3d 655, 664 (2d Cir. 2012).

Plaintiffs[10]  claim that the School District violated Title VI in suspending and searching J.S. and J.E., and they raise several allegations to indirectly demonstrate the School District's racial discrimination against them:

- Allegations that two other Caucasian students—one who was caught owning a marijuana vape pen, the other who allegedly smoked marijuana at school—were not suspended or punished as harshly (Doc. No. 102 at PageID 2644–45);

---

[10] It is unclear whether only J.S. and J.E. raise these Title VI claims, or if their parents also bring claims under this provision, because Plaintiffs only raise allegations with reference to J.S. and J.E.  Generally, parents lack standing to sue under Title VI in their own right because they are not the intended beneficiaries of a federally funded education program.  *See, e.g., Tinney v. City of Detroit*, 188 F.3d 509 (Table), No. 98-1510, 1999 WL 685921, at *7 (6th Cir. Aug. 26, 1999); *Jackson v. Katy Indep. Sch. Dist.*, 951 F. Supp. 1293, 1298 (S.D. Tex. 1996); *Wheatley v. Boardman Loc. Schs.*, No. 4:21-cv-1831, 2022 WL 2291703, at *6 (N.D. Ohio June 24, 2022).  Even assuming, *arguendo*, that the parents have standing to sue under Title VI on behalf of their minor children, as discussed above, Plaintiffs cannot satisfy their burden at this stage to demonstrate a triable issue on this claim.  Thus, the Court uses "Plaintiffs" in the Title VI section to encapsulate any possible argument that J.S., J.E., or their parents may raise.

- An allegation from an African American student, a non-party, that Kaltenbach did not punish a student who made a harassing statement to her (Doc. 92 at PageID 2147–48; Doc. No. 102 at PageID 2625–27);

- Statistical evidence purportedly showing that Northmont High School suspends black students for marijuana more often than white students (*See* Doc. No. 101-1); and

- An allegation that the School District acted in a discriminatory manner because someone placed an inappropriate display of a brown mask on a pole in the high school's parking lot, and Northmont High School officials did not remove it (Doc. No. 102 at PageID 2645–46).

The Court considers these in turn, with reference to each Defendant.

### 1. Title VI Claims Against Kaltenbach

"In a title VI case, the proper defendant 'is the entity rather than an individual.'" *Brooks v. Skinner*, 139 F. Supp. 3d 869, 881 (S.D. Ohio 2015); *see also, e.g.*, *Buchanan*, 99 F.3d at 1356. Because "it is beyond question" that Plaintiffs cannot sue Kaltenbach under Title VI, he is entitled to judgment as a matter of law on that claim. *Shotz v. City of Plantation*, 344 F.3d 1161, 1171 (11th Cir. 2003); *see also, e.g.*, *Davis v. Flexman*, 109 F. Supp. 2d 776, 793–94 (S.D. Ohio 1999).[11]

### 2. Title VI Claims Against the School District

Title VI "prohibits only intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). Evidence of intentional discrimination under Title VI is either direct or indirect. *See Paasewe v. Ohio Arts Council*, 74 F. App'x 505, 506–07 (6th Cir. 2003). Direct evidence is rare, *see, e.g.*, *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998), so the Sixth Circuit—and this Court—permit a plaintiff to use indirect evidence to prove discriminatory intent. *See, e.g.*, *Johnson v. City of Clarksville*, 186 F. App'x 592, 595 (6th Cir. 2006); *Paasewe*, 74 F. App'x at 506–07; *Saqr v. Univ. of Cincinnati*, No. 1:18-cv-542, 2021 WL 6064354, at *4 (S.D. Ohio Dec.

---

[11] This also applies to the extent Plaintiffs assert Title VI claims through *respondeat superior*. *See Jones v. City of Detroit*, 20 F.4th 1117, 1121 (6th Cir. 2021).

15

22, 2021). This employs the *McDonell-Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Johnson*, 186 F. App'x at 595; *Paasewe*, 74 F. App'x at 507. Plaintiffs first must show: (1) they belonged to a protected class; (2) they suffered adverse action from defendants in pursuing their education; (3) they were qualified to continue pursuing their education; and (4) they were treated differently from similarly situated students outside the protected class. *See Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). Once a plaintiff meets that threshold, the burden of production shifts to the defendant to show a legitimate, non-discriminatory reason for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant can, then the plaintiff must show that this reason is pretextual. *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007). "[A] plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Id.* (citing *Hedrick v. W. Res. Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004)).

Plaintiffs lack direct evidence of intentional discrimination, so—although their arguments are unclear—they seemingly opt for the *McDonald-Douglas* burden-shifting analysis. *See* Doc. No. 102 at PageID 2643–45. However, Plaintiffs cannot identify any relevant comparators. One that they offer, "G.M.," was in Northmont Middle School when suspended for having a marijuana vape pen. Doc. No. 98 at PageID 2219–20. He chose an alternative program available to the students at Northmont Middle School and received a three-day suspension. *Id.* at PageID 2219–20; Doc. No. 99-1 at PageID 2519. A plaintiff "need not demonstrate an exact correlation," but his or her "comparators 'must be similar in all of the *relevant* aspects.'" *Foster*, 573 F. App'x at 396 (emphasis in original) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344,

352 (6th Cir. 1998)). Since G.M. was a middle schooler when suspended, subject to different standards than high schoolers, that alone means that he is not an adequate comparator. *See, e.g.*, *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 355–56 (8th Cir. 2020) (summary judgment was appropriate on graduate student's discrimination claim where the record did not show that the comparators were also graduate students). Even assuming, *arguendo*, that G.M. is an adequate comparator, Defendants note that G.M. only received a lesser punishment because he opted for the alternative program, and the School District has a legitimate justification to offer this option to middle schoolers based on the age difference between middle school and high school students. *See* Doc. No. 98 at PageID 2220; *cf. Palmer v. Potter*, 97 F. App'x 522, 525 (6th Cir. 2004) (noting that employer could treat "veteran" employees harsher "than their junior colleagues"). Plaintiffs do not respond to this reason, further entitling Defendants to summary judgment. *See Paasewe*, 74 F. App'x at 508; *see also, e.g.*, *Alexander*, 576 F.3d 558–65.

Nor is the other student, whom Plaintiffs contend smoked marijuana on school grounds without receiving discipline, a relevant comparator. Plaintiffs offer no evidence that Northmont High School suspended him and gave him a lesser punishment, or that Defendants were aware that this student smoked, possessed, or smelled like marijuana and chose to allot him different treatment, so he is not "similar in all of the *relevant* aspects." *Ercegovich*, 154 F.3d at 352 (emphasis in original); *cf. Rallins v. Ohio State Univ.*, 191 F. Supp. 2d 920, 929–30 (S.D. Ohio 2002) (granting summary judgment where female plaintiff offered no evidence that male coaches had comparable employment situations).

Plaintiffs' remaining instances—involving a non-party, statistics, and a display—also do not withstand scrutiny.[12] First, actions "by decision makers unrelated to the decisional process

---

[12] During his deposition, J.S. testified about an incident where a white student who instigated an altercation with J.S. was not punished, despite J.S. reporting it to Kaltenbach. Doc. No. 61 at PageID 1482. Plaintiffs'

itself [cannot] suffice to satisfy the plaintiff's burden of demonstrating animus[,]" so Kaltenbach's actions with the non-party that occurred outside of, and independent from, J.S.'s and J.E.'s suspensions remain irrelevant. *Foster*, 573 F. App'x at 393 (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)). Second, Title VI "doesn't prohibit disparate-impact discrimination." *Doe v. BlueCross BlueShield of Tenn.*, 926 F.3d 235, 240 (6th Cir. 2019) (citing *Alexander*, 532 U.S. at 240). That forecloses Plaintiff's reliance on suspension statistics purporting to show a disparate impact on African American students. *See Alexander*, 532 U.S. at 240; *Wilson v. Collins*, 517 F.3d 421, 431–32 (6th Cir. 2008); *Thompson v. Ohio State Univ.*, 639 F. App'x 333, 341–42 (6th Cir. 2016). Finally, a plaintiff may not raise new theories "in response to summary judgment" that are not implicated in the complaint. *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (citations omitted); *see also Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 660 (6th Cir. 2012). This prevents Plaintiffs from raising the parking lot display, or the student who reported harassment to Kaltenbach, as instances of intentional discrimination—theories that are meritless anyway because Plaintiffs cannot establish that these show "intentional discrimination *by school officials*[,]" *M.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 454 (6th Cir. 2021) (emphasis in original), or relate "to the decisional process" at issue in the present case. *Foster*, 573 F. App'x at 393 (quoting *Bush*, 161 F.3d at 369). Therefore, on every theory, their Title VI claims fail as a matter of law.[13]

---

complaint further mentioned some allegedly discriminatory incidents occurring while J.S. was in middle school. *See* Doc. No. 23 at PageID 613. However, Plaintiffs do not revisit these allegations in their opposition to summary judgment. *See* Doc. No. 102. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). Moreover, Plaintiffs "may not rely merely on allegations or denials in [their] own pleading" to resist summary judgment. *Alexander*, 576 F.3d at 558. Thus, for these additional reasons, summary judgment for Defendants is warranted here to the extent Plaintiffs rely on these allegations.

[13] Plaintiffs ambiguously reference the Title VI deliberate indifference standard in their opposition to summary judgment. *Id.* at PageID 2642–43. They refer to alleged misconduct from the City of Clayton

F.      **Equal Protection Clause Claims**

"The Equal Protection Clause prohibits discrimination . . . which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011) (citation omitted).  Like Title VI, it "forbids only intentional discrimination[,]" *Horner v. Ky. High Sch. Athletics Ass'n*, 43 F.3d 265, 267 (6th Cir. 1994), and uses the *McDonnell-Douglas* burden-shifting framework,  *see Lautermilk v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003).

J.S. and J.E., in conjunction with their Title VI claims, bring claims of racial discrimination under the Equal Protection Clause.  They cite incidents involving the non-party, statistics, and the parking lot display, as well as their searches and suspensions, as evidence of the School District's allegedly unconstitutional, and racially discriminatory, treatment.  *See* Doc. No. 102 at PageID 2633, 2643–47.  For the reasons stated above, *see supra* Section III(E), these claims fail as a matter of law because J.S. and J.E. cannot identify comparators and lack evidence of intentional discrimination.  Notably, they emphasize an alleged disparate impact in suspension length for African American students compared to white students.  Doc. No. 102 at PageID 2643.  But conduct with a "disproportionately adverse effect upon a racial minority" is unconstitutional "only if that impact can be traced to a discriminatory purpose." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979); *see also Ricci v. DeStefano*, 557 U.S. 557, 627 (2009) (Ginsburg, J., dissenting) ("The Equal Protection Clause . . . prohibits only intentional discrimination; it does not

---

and its police officers—individuals and entities, as Plaintiffs acknowledge, dismissed from this case. *Id.* at PageID 2624–25.  This "perfunctory" argument is so unclear that the Court cannot speculate what alleged harassment the School District was deliberately indifferent to. *El-Moussa*, 569 F.3d at 257.  Regardless, nothing in the record indicates that J.S. and J.E. were treated harsher than other students, or that the School District turned a blind eye to mistreatment at its high school. *See, e.g.*, *Thompson*, 639 F. App'x at 342–44; *Foster*, 573 F. App'x at 388–89.

have a disparate-impact component" (citations omitted)).  Assuming, *arguendo*, that a disparate impact can be shown here, no such discriminatory purpose has been shown—on summary judgment—to exist here.  Thus, the Court shall grant summary judgment to Defendants.

### G. Supplemental Jurisdiction Over Plaintiffs' State Law Claim

A district court "may decline to exercise supplemental jurisdiction" over claims if it "has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3).  When "the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384–85 (6th Cir. 2003)).  "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'"  *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)) (citing *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).

Only the negligent supervision claim remains.  *See* Doc. No. 23 at PageID 628–30.  On balance, the § 1367 factors support declining supplemental jurisdiction over this claim.  All the federal claims here have been dismissed before trial.  *See Brooks*, 577 F.3d at 709.   In the interest of fairness, "[a] state court should have the opportunity to consider the merits of Plaintiff[s'] state law claim."  *Aquilina v. Wrigglesworth*, 759 F. App'x 340, 348 (6th Cir. 2018) (citation omitted). Accordingly, Plaintiffs' remaining state law negligent supervision claim shall be dismissed without prejudice.

### IV.

For the reasons stated, the Court (1) **GRANTS** Defendants' motion for summary judgment (Doc. No. 99) on all federal claims; (2) **DISMISSES WITHOUT PREJUDICE** Plaintiffs' remaining state law claim for lack of supplemental jurisdiction; and (3) **TERMINATES** this case

on the docket.

       **IT IS SO ORDERED.**

Date:  <u>February 8, 2023</u>                    <u>s/Michael J. Newman</u>
                                                 Hon. Michael J. Newman
                                                 United States District Judge